### State of Vermont v. Hilda Daigle

[385 A.2d 1115]

No. 121-76

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed April 6, 1978

*Dale O. Gray,* Caledonia County State's Attorney, St. Johnsbury, for Plaintiff.

*Arthur H. Johnson,* St. Johnsbury, for Defendant.

**Hill, J.** This is an appeal from a judgment of conviction entered upon a jury verdict finding appellant guilty of violating 33 V.S.A. § 2581:

> A person shall not:
>
> . . . .
>
> (3) Having knowledge of the occurrence of any event affecting his initial or continued rights to any assistance or benefits under the welfare laws, conceal, or fail to promptly disclose such event with an intent fraudulently to secure payment either in a greater amount than is due or when no payment is authorized.

In 1974, appellant applied for and received welfare benefits from the St. Johnsbury office of the Department of Social Welfare (D.S.W.). She was at the same time entitled to receive fifty dollars ($50) per week child support payments from her former husband pursuant to their divorce settlement. On August 8, 1974, appellant went to the D.S.W. office and complained that she was not receiving the child support payments on a regular basis. As a result of this conversation, appellant filled out and signed a support assignment agreement. (D.S.W. Form No. 107). This agreement provided that the support payments would be made directly to the D.S.W.

and that the assignment was "premised on the granting of assistance" by the D.S.W. The agreement further provided, in large print, that any support checks received by appellant while the assignment was in effect should be turned over to the D.S.W. After completing the form, appellant was immediately issued a supplemental assistance check for two hundred and fifteen dollars ($215). The following month she received welfare assistance increased by an amount reflecting the anticipated receipt of the support payments by the D.S.W.

Apparently there was mishandling and consequent delay in the processing of the support assignment agreement, because appellant's former husband was not notified of the assignment until late September. In the interim, he had forwarded six separate fifty dollar support checks to appellant. She cashed all six checks without notifying the D.S.W. of their receipt. Subsequently, the D.S.W. discovered her continued receipt of the assigned support checks. The ensuing investigation resulted in a criminal prosecution and judgment of conviction.

Appellant first alleges that the State failed to present evidence sufficient to prove: (1) the occurrence of an event affecting her continued right to benefits; (2) that she concealed or failed to promptly disclose such event; and (3) that she intended fraudulently to secure undeserved benefits. Second, appellant argues that the court erred by instructing the jury that even if the appellant misunderstood the effect of her assignment to the D.S.W. of the support payments, or her duty to turn over to the D.S.W. any support payments subsequently received by her, she could be found guilty of fraudulent criminal intent if her misunderstanding was unreasonable.

## I.

When examining claims of insufficiency of evidence, "[w]e are bound to uphold the judgment of the court below unless we find that there was no credible evidence presented which would justify a guilty verdict. We are required to view the evidence in the light most favorable to the State. It is for the jury to determine whether the evidence is believable and, if believed, what weight to accord it." *State*

v. *Ryan*, 135 Vt. 491, 493, 380 A.2d 525, 526 (1977) (citations omitted).

■ In its prosecution of the case below, the State introduced evidence which tended to show, if believed, that the facts were as set out earlier in this opinion. On this state of facts, we think established the occurrence of events affecting appellant's right to benefits (receipt of the support checks after they were assigned to the D.S.W. in exchange for supplemental benefits), as well as the failure of appellant to promptly disclose these events to the D.S.W. Furthermore, we think these facts justify the inference that appellant knew that she was not entitled to both the increased welfare payments and the support checks received after August 8th, as well as the inference that in failing to notify the D.S.W. of the receipt of those support checks appellant was intending "fraudulently to secure payment . . . in a greater amount than [was] due." Viewing all the admissible evidence in the light most favorable to the prosecution, it cannot be said that the evidence was not sufficient to support a guilty verdict.

## II.

In considering appellant's challenge to the instructions given the jury by the court below, we must ask whether the charge, as a whole, "breathes the true spirit and doctrine of the law" or whether on the contrary there is "ground to say that the jury has been misled." *State* v. *Girouard*, 135 Vt. 123, 139, 373 A.2d 836, 847 (1977); *State* v. *Rebideau*, 132 Vt. 445, 454, 321 A.2d 58, 64 (1974).

Appellant's primary defense at trial was that she misunderstood the effect of the assignment of her support checks to the D.S.W. and, consequently, her duty to turn over to the D.S.W. support checks subsequently received by her. Because of this lack of understanding, appellant maintains, she had neither "knowledge of the occurrence of any event affecting [her] . . . rights to . . . benefits," nor "intent fraudulently to secure payment . . . in a greater amount than is due."

■ At trial, appellant objected to portions of the court's charge in which it instructed the jury that it should consider whether appellant's alleged misunderstanding was "reason-

able."[1] The court refused to reconsider these portions of its charge. We think this was reversible error.

The inclusion of the words "[h]aving knowledge" and "with an intent fraudulently to secure" in 33 V.S.A. § 2581 indicates clearly the Legislature's intention to punish only those who were aware that their proscribed act or omission would result in their receiving undeserved benefits. See *Crawford* v. *Joslyn*, 83 Vt. 361, 362–63, 76 A. 108 (1910). As charged by the court below, however, the jury could have found appellant guilty even if they believed her claim that she did not know that the support checks were no longer hers to use.

Proof of a requisite mental state often depends on inferences from circumstantial evidence, and therefore a jury might properly be instructed that actual knowledge (or intent) may be inferred from all the circumstances. However, the jury may not be absolved of its responsibility to find, where required, actual knowledge (or intent). See *People* v. *Mackell*, 47 App. Div. 2d 209, 218–19, 366 N.Y.S.2d 173, 182–83 (1975). The charge in this case allowed the jury to substitute "unreasonable lack of knowledge" for "actual knowledge." If the charge had made it clear to the jury that they could only find appellant guilty if they concluded that appellant actually did "have knowledge" of events affecting her welfare eligibility and actually did "intend fraudulently to secure" undeserved benefits, their verdict might have been different.

*Reversed and remanded for a new trial.*

---

[1] "Counsel has argued to you that she may well have understood that she was entitled to receive those checks and to use them. In that connection you must consider all of the evidence in the case and whether that is a reasonable conclusion which the Defendant could reach on all of the facts in the case." Trial Transcript at 127.

"As I have said, if you find that the Defendant did not understand and that understanding or lack of understanding is reasonable under all of the circumstances and in fact existed then you should find the Defendant not guilty." Trial Transcript at 128.