# State of Vermont v. Michael A. Bristol

[465 A.2d 278]

No. 459-81

Present: Billings, C.J., Hill, Underwood and Gibson, JJ., and
Larrow, J. (Ret.), Specially Assigned

Opinion Filed July 18, 1983

*John J. Easton, Jr.*, Attorney General, *Glenn A. Jarrett*, Assistant Attorney General, Montpelier, *Dale O. Gray*, Caledonia County State's Attorney, and *Elizabeth Leopold*, Deputy State's Attorney (On the Brief), St. Johnsbury, for Plaintiff-Appellee.

*Martin & Paolini, P.C.*, Barre, for Defendant-Appellant.

**Gibson, J.** On November 20, 1980, an elderly brother and sister were shot and killed at their farm in Danville, Vermont. Defendant, who on the date of the offense was seventeen and one-half years old, was subsequently convicted of second-degree murder of the sister, Marguerite Vance, and of felony murder of her brother, Levi Vance. 13 V.S.A. § 2301. Defendant was sentenced to a term of twenty-five years to life imprisonment for each offense, sentences to be served concurrently.

On appeal, guaranteed by V.R.A.P. 3(b) in criminal cases resulting in sentences of death or life imprisonment, defendant raises four issues which will be addressed in turn: (1) whether the right to a speedy trial was denied, in violation of the Sixth Amendment of the United States Constitution and the Tenth Article of Chapter I of the Vermont Constitution, because of delays attributable to the State; (2) whether the trial court caused reversible error in trying both murder charges together over defendant's objections; (3) whether the court erred in denying defendant's motion for a judgment of acquittal because of the circumstantial nature of the evidence and defendant's incapacity to formulate the requisite intent due to intoxication; and (4) whether the indictments against defendant should be quashed because of prosecutorial misconduct. For reasons which appear herein, we disagree with defendant's claimed errors and affirm.

A review of the facts is essential for an understanding of defendant's allegations. The Vances lived on a farm in an isolated section of North Danville. On the morning of November 20, 1980, defendant and two companions drove to Thetford to hunt deer. At some point during the drive, the conversation turned to a discussion of ways to get some money for a trip to Florida. They decided to drive to the Vance home to see whether the elderly Levi Vance would offer them some work. They also discussed the local rumor that the Vances stored their savings in milk cans kept in their basement. After a brief conversation with Levi Vance in which no work was proffered, the three young men left.

They drove a short distance down the road and stopped the car. Defendant and one of his companions, then a juvenile, both now wearing masks and carrying their hunting rifles, walked back up to the farm. They first approached Mr. Vance,

who was working on his car in an attached barn, and demanded money. He refused to give them money, whereupon the juvenile's "gun went off." The juvenile testified that defendant's gun then went off. Levi Vance was killed by two bullets, one from the juvenile's rifle and one from defendant's rifle. The two boys then gained entrance through a glassed-in porch area of the farmhouse where Marguerite Vance was working. As they aimed their guns at Miss Vance, she cried, "No, boys, don't." The juvenile fired first and immediately heard a shot from defendant's gun. According to testimony by the medical examiner who performed an autopsy on the victims, Miss Vance's wounds could not have been caused by one bullet. The boys then briefly searched the house, including the basement where money was allegedly hidden, but left empty-handed; they then returned to their car and informed the third person that they had killed the Vances.

Two weeks after the killings, on December 3, 1980, defendant was charged by information with two counts of first-degree murder and two counts of felony murder. However, after defendant succeeded in suppressing certain key evidence, the State dismissed the information. Thereafter, in exchange for agreements to testify against defendant, the State granted immunity to the juvenile and entered into a plea bargain with the person who had remained with the car during the murder. See *State* v. *Williams*, 142 Vt. 81, 451 A.2d 1142 (1982). With its new evidence, the State convened a grand jury, which subsequently issued a true bill. After a change of venue, defendant was tried by jury on both murder counts, and convicted.

I.

Defendant in his brief urges that his constitutionally protected right to a speedy trial was denied because of the delay between the original information on December 3, 1980, and the eventual trial on the grand jury indictments beginning July 27, 1981. However, during oral argument, defendant conceded that his reliance on 12 V.S.A. App. VIII, A.O. 5 was misplaced due to a miscalculation of the time elapsed. In addition to defendant's miscalculation of the length of his incarceration, he fails to exclude certain periods of delay in the proceedings which were of his own making. See *id.*, A.O. 5, § 4.

For example, contrary to the mandate of § 4, defendant does not deduct the time during which he was hospitalized for a competency determination. Nor does he take into account his pretrial suppression motions, A.O. 5, § 4(a), or the additional time he requested to complete discovery after the State was ready for trial, A.O. 5, § 4(b).

Moreover, defendant has not shown prejudice from any delay that did occur, a requirement under both the federal and the Vermont constitutions. *Barker* v. *Wingo*, 407 U.S. 514, 532–33 (1972); *State* v. *Roy*, 140 Vt. 219, 228, 436 A.2d 1090, 1094 (1981). As this Court has said, prejudice is the most important factor to consider in analyzing speedy trial issues. *State* v. *Unwin*, 139 Vt. 186, 197, 424 A.2d 251, 257–58 (1980). Defendant's unsupported assertion that delay is per se prejudicial because the prosecution can continue "to build a case against the defendant" falls far short of the specific claims of "prejudice to the defense at trial" that defendant must make. See *id.*

Considering the various exclusions enumerated above and the lack of any showing of prejudice by defendant, it is clear that there was no violation of A.O. 5 and no denial to defendant of his right to a speedy trial.

## II.

Defendant's second claim of error is that the trial court should not have ordered joinder of the two indictments against defendant over his objections. In support of his argument, defendant claims (1) that the trial court erroneously cited V.R.Cr.P. 8(a)(2) as the reason for allowing joinder; and (2) that V.R.Cr.P. 14(b)(1)(A) gives him an absolute right to demand separate trials on these facts.

While defendant is technically correct in stating that V.R.Cr.P. 8 allows joinder of offenses for purposes of the information or indictment and that V.R.Cr.P. 13(a) should have been cited for joinder of offenses at trial, we fail to see any prejudice as a result of this error. Cf. *State* v. *Beshaw*, 136 Vt. 311, 313, 388 A.2d 381, 382–83 (1978). From the transcript of the hearing on defendant's motion to sever, it is

clear that the court correctly read V.R.Cr.P. 8, 13 and 14 together. After listening to arguments of counsel, the court determined that no absolute right existed under V.R.Cr.P. 14(b) (1) (A) because of the existence of a single scheme or plan, to wit, to rob the Vances. Rule 13, and the Reporter's Notes thereto, adopt the analysis of Rule 8, and allow joinder of offenses even over defense objections. Thus, the most that can be said is that the trial court reached the right result for the right reason, but cited the wrong rule. An error of this nature does not require reversal.

■ The trial court necessarily has broad discretion to determine the appropriateness of joinder. Reporter's Notes, V.R.Cr.P. 13. Its discretionary rulings are not subject to review absent proof by defendant that the court abused its discretion. *State* v. *Savo*, 141 Vt. 203, 208, 446 A.2d 786, 790 (1982). Defendant merely invites this Court to agree that obvious and inherent prejudice occurs whenever two homicide charges are tried together. In cases such as the one at bar, two trials would require a duplication of virtually all the significant testimony: the murders occurred at the same location while defendant was embarked on the same mission, the same person witnessed both murders, and they occurred within minutes or so of each other. No abuse of discretion appears in the joinder of these offenses for trial.

### III.

■ Defendant's third claimed error is that the court erred in denying his motion for a judgment of acquittal made pursuant to V.R.Cr.P. 29(a). In reviewing such a claim, this Court must examine the evidence in the light most favorable to the State, excluding the effect of modifying evidence. *State* v. *Onorato*, 142 Vt. 99, 102, 453 A.2d 393, 394 (1982). Thus considered, it is clear that defendant's claim must fail.

■ Defendant's argument is twofold: first, he asserts that the evidence does not prove beyond a reasonable doubt that his bullet inflicted the fatal wound rather than a bullet from the juvenile accomplice's gun. This argument falls of its own weight. The jury was charged, without objection (and indeed without error), that the so-called *Barr-Orlandi* rule applied.

See *State v. Barr*, 126 Vt. 112, 223 A.2d 462 (1966) ; *State v. Orlandi*, 106 Vt. 165, 170 A. 908 (1934). In other words, the State had no obligation to prove which participant in a pre-conceived criminal plan fired the fatal shot, since the acts of each are attributable to the other. *State v. Sears*, 130 Vt. 379, 382, 296 A.2d 218, 219 (1972).

 Defendant next asserts that his voluntary intoxication was so great that he was not legally responsible for his actions. *State v. Pease*, 129 Vt. 70, 76–77, 271 A.2d 835, 839–40 (1970). However, this factual claim was pursued at length during the trial and eventually rejected by the jury. Moreover, the instruction on voluntary intoxication was given twice, without objection. Cf. *State v. Dusablon*, 142 Vt. 95, 96–97, 453 A.2d 79, 81 (1982). The evidence of voluntary intoxication, taken in the light most favorable to the State, is not so compelling as to prevent a jury from finding that defendant had the necessary intent and thus does not require a judgment of acquittal as a matter of law.

## IV.

Defendant's fourth and final claim of error is that the trial court should have quashed the indictment against him because of prosecutorial misconduct. Apparently, defendant's position is that when the State dismissed the information against defendant and conceded its inability to prosecute him successfully thereunder, it was foreclosed from filing new charges against him notwithstanding further developments in the investigation.

In fact, between the dismissal of the information and the convening of a grand jury, the State reached plea agreements with defendant's two accomplices. Thus, "new evidence" in the form of agreements to testify against this defendant substantially improved the State's chances for obtaining a conviction.

The only authorities to which we are cited for defendant's position are not on point. In *State v. Lapham*, 135 Vt. 393, 377 A.2d 249 (1977), the defendant was the subject of an inquest while murder charges were pending. Such was clearly not the case here. Similarly, in *United States v. Samango*, 607 F.2d 877, 884 (9th Cir. 1979), the prosecution returned three times to the grand jury before succeeding in convincing it to return

an indictment against the defendant even though no new evidence against him was presented. Again this is a situation different from that presented to us in the case at bar.

■ This Court has long held that prosecutors have broad discretion to enter a nolle prosequi when they feel they do not have sufficient evidence to support a conviction and that such action does not bar the filing of a subsequent charge for the same offense. *State* v. *Dopp,* 127 V.t. 567, 572, 255 A.2d 186, 190 (1969). See generally Wharton's Criminal Procedure § 518, at 422–23 (12th ed. 1975).

■ Defendant claims that pretrial publicity assured that the grand jury would return an indictment. We need not speculate about what effect, if any, the publicity had on the grand jury. The evidence available to the State at the time of the grand jury hearing was sufficient to support the true bill which issued. No error appears from the use of a grand jury in this case after pending charges against defendant had been dismissed. *State* v. *Dopp, supra.*

After extensive review of the record in this case and the claims of error presented in this appeal, we find no error requiring reversal of defendant's convictions.

*Judgment affirmed.*