## State of Vermont v. Aaron E. Johnson

[612 A.2d 1114]

No. 90-287

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed April 17, 1992

*Jeffrey L. Amestoy*, Attorney General, and *Susan R. Harritt*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Carlyle Shepperson*, West Corinth, for Defendant-Appellant.

**Morse, J.** Defendant appeals from a jury conviction on six counts of lewd or lascivious conduct with a child, in violation of 13 V.S.A. § 2602. He argues that the trial court erred by (1) failing to instruct the jury on the effect of the statute of limitations; (2) instructing the jury that causing a child to touch the child's own body may constitute a lewd or lascivious act "upon or with the body" of a child; (3) not granting a mistrial in light of the prosecution's improper questioning of a witness and closing argument; and (4) denying his motion for severance. We affirm.

Defendant worked as a counselor during a summer camp session held from June 30, 1985 to July 13, 1985 for children with mental disabilities. The State charged defendant with seven counts of lewd or lascivious behavior with a child based on his conduct toward four different boys during that two-week period. The counts alleged that "on or about" July 1985 defendant fondled the genitals of three boys, rubbed his genitals against another boy, and had two boys masturbate while he and other juveniles looked on. The jury found defendant guilty of six of the seven counts.

## I.

Defendant first claims that the court erred by refusing to instruct the jury that he could not be found guilty of offenses committed before July 1, 1985, because the three-year statute of limitations in effect on June 30, 1985 had run when charges were brought against him in July of 1988. We disagree.

Until 1985, 13 V.S.A. § 4501 permitted prosecutions for unspecified crimes, including lewd or lascivious conduct with a

child, only within three years after the commission of the offense. Effective July 1, 1985, however, prosecutions for lewd or lascivious conduct with a child could be commenced "within six years after the commission of the offense." 13 V.S.A. § 4501(c). Apparently, both the prosecution and the defense in this case proceeded under the assumption that the three-year statute of limitations was controlling with regard to conduct alleged to have occurred before July 1, 1985. At the charge conference, the trial court determined that the prosecution was within the three-year statute of limitations, and refused to instruct the jury, as requested by defendant, that time is an essential element of the crime in this instance.

Approximately a year after the conviction here, we held in *State v. Petrucelli*, 156 Vt. 382, 382, 592 A.2d 365, 365 (1991), that the 1985 amendment lengthening the statute of limitations for sexual assault and lewd and lascivious conduct from three years to six years applied retroactively to conduct for which the prior statute of limitations had not run at the time of the amendment. Under that holding, the current six-year statute of limitations governed the offenses charged in this case even if they occurred before July 1, 1985, and defendant's first claim of error is unavailing.

██ ██ We reject defendant's assertion, which he made for the first time in his reply brief, despite having filed his initial brief approximately seven months after *Petrucelli* was decided, that our holding in that case violates the federal constitutional bar against ex post facto laws. See *State v. Creekpaum*, 753 P.2d 1139, 1144 (Alaska 1988) (extension of statute of limitations for crime of sexual assault on a minor before the original period of limitation had run was not an ex post facto law in violation of the state or federal constitution); *People v. Lewis*, 180 Cal. App. 3d 816, 822-23, 225 Cal. Rptr. 782, 785 (1986) ("A law which increases a limitations period or provides a new method of tolling it may be applied immediately to all crimes as to which the period has not yet run under the prior law."); *State v. Nunn*, 244 Kan. 207, 220, 768 P.2d 268, 278–79 (1989) (agreeing with general rule that retroactive application of statute extending limitations period does not violate constitutional bar against ex post facto laws); *Commonwealth v. Bargeron*, 402 Mass. 589, 591, 524 N.E.2d 829, 830 (1988) (courts have been consistent in

adopting view that extension of limitations period neither changes the elements of, nor enhances the punishment for, a crime, and therefore does not violate bar against ex post facto laws). We also reject defendant's companion argument that the *Petrucelli* decision violates due process because it operates as an ex post facto law by unforeseeably enlarging a criminal act. See *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964) (judicial enlargement of narrow and precise trespass statute to convict Afro-Americans of trespassing at "whites-only" restaurant violated due process by operating as an ex post facto law). As noted above, lengthening a limitations period does not "enlarge" an offense by changing its elements or increasing its punishment. Moreover, in *Petrucelli* itself, we distinguished contrary case law in the civil field, and expressly stated that we were not altering well-established criminal law. 156 Vt. at 385, 592 A.2d at 366–67.

## II.

■ Next, defendant argues that the trial court erred by instructing the jury that the element "upon or with the body of a child" may be satisfied upon a finding that defendant "caused the child to touch his own body in a sexually stimulating or erotic manner." We agree with the trial court that construing the phrase "upon or with the body of a child" to preclude the prosecution of persons who cause children to engage in sexual acts or to pose in a sexually explicit manner would render § 2602 ineffective or lead to absurd results. See *State v. Sidway*, 139 Vt. 480, 484, 431 A.2d 1237, 1239 (1981). The act of encouraging a child to masturbate in the presence of others is plainly an act committed "with the body of a child." See *People v. Meacham*, 152 Cal. App. 3d 142, 153, 199 Cal. Rptr. 586, 593 (1984) (children touching their own genitalia at the instigation of the defendant satisfied elements of crime proscribing lewd and lascivious acts on or with the body of a child).

## III.

Defendant also contends that the court abused its discretion by not granting a mistrial based on a question posed by the prosecutor during the examination of one victim's mother and a statement made during the State's closing argument. The pros-

ecutor asked the mother whether her son would "make something like this up," referring to a lewd act allegedly committed by defendant. The mother answered, "No," and defense counsel objected. The court had the question and answer stricken from the record, admonished the prosecutor, and instructed the jury to ignore the exchange. In chambers, defense counsel asked for a mistrial. The court denied the motion, concluding that the jury had not been unduly influenced by the error, but warned the prosecutor that another similar question would result in a mistrial.

The second challenged statement was made by the prosecutor during her closing argument:

> At this point, after hearing all of the evidence for the last few days in this case, you should have a belief in the truth of the charges against [the defendant]. It wasn't pleasant to sit through this, and there is nothing that we can do to make what happened to these kids right. But if we tell them we don't believe them, it makes it a whole lot worse.

Defense counsel objected to these comments, and the court reminded the jury that the case was to be decided on the evidence presented, not on either sympathy or prejudice for any of the parties involved. Defendant argues that the prosecutor's statement, when considered in light of the court's earlier warning, mandated a mistrial. We conclude that the court acted well within its discretion in denying the motion for a mistrial. *State v. Roberts*, 154 Vt. 59, 73, 574 A.2d 1248, 1255 (1990).

■■ Considering that the response to the prosecutor's improper question was provided by the victim's mother rather than an expert witness, see *State v. Wetherbee*, 156 Vt. 425, 435, 594 A.2d 390, 395 (1991) (allowance of an expert's testimony related to victim's credibility is especially prejudicial because "the average juror believes that psychologists are specially trained to ferret out truth"), and that the court immediately admonished the attorney and instructed the jury to disregard the question and answer, we cannot conclude that the court abused its discretion in determining that defendant had not been prejudiced. Further, while appealing to a juror's sympathies may be improper, the prosecutor's reference here was not so egregious as to warrant a mistrial. See *State v. Francis*, 151

Vt. 296, 299, 561 A.2d 392, 394 (1989) (citing factors relevant for determining whether a prosecutor's statements to the jury ought to result in reversal).

## IV.

Finally, defendant argues that the trial court should have granted his motion to sever the charged offenses as a matter of right because they were "joined for trial solely on the ground that they are of the same or similar character." See V.R.Cr.P. 14(b)(1)(A).

Multiple offenses may be joined in one information or indictment when the offenses "(1) are of the same or similar character, even if not part of a single scheme or plan; or (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." V.R.Cr.P. 8(a). When the "offenses have been joined for trial *solely* on the ground that they are of the same or similar character, the defendant shall have a *right* to a severance of the offenses." V.R.Cr.P. 14(b)(1)(A) (emphasis added). Thus, the court has considerable discretion in determining whether to sever for trial offenses joined because they are a series of acts connected together or constituting parts of a single scheme or plan. See, e.g., *State v. Venman*, 151 Vt. 561, 565–66, 564 A.2d 574, 578 (1989) (single scheme existed in Medicaid fraud case where defendant used a particular method to prepare and submit numerous false claims); *State v. Chenette*, 151 Vt. 237, 242–43, 560 A.2d 365, 370 (1989) (same); *State v. Bristol*, 143 Vt. 245, 249–50, 465 A.2d 278, 280–81 (1983) (murder of husband and wife within minutes of each other at their home arose from scheme to rob the couple).

Offenses of the same or similar character are, in fact, normally unrelated crimes that "'involve different times, separate locations, and distinct sets of witnesses and victims.'" 2 W. LaFave & J. Israel, Criminal Procedure § 17.1(b), at 355 (1984) (quoting 2 ABA Standards for Criminal Justice § 13–2.1, Commentary (2d ed. 1980)); see 2 ABA Standards, *supra*, at § 13–1.3 ("Offenses committed at different times and places are not 'related' merely because they are of the same or similar character."); *State v. Hatfield*, 380 S.E.2d 670, 673 (W. Va. 1988) (citing numerous jurisdictions holding that offenses need not be re-

lated to be the same or similar in character). Of course, in a given situation offenses may be of the same or similar character, and, at the same time, constitute a series of connected acts or parts of a single scheme. See *State v. Bradley*, 414 A.2d 1236, 1238 (Me. 1980) (seven crimes of theft committed in nearby towns within four-day period "not only were of the 'same or similar character' but also were connected in time, purpose and *modus operandi*"). For example, in *United States v. Eades*, 615 F.2d 617, 619 (4th Cir. 1980), *cert. denied*, 450 U.S. 1001 (1981), the defendant was charged with crimes ranging from simple assault to aggravated sexual assault as the result of three similar but distinct incidents at the same location over a period of approximately one week. The court ruled that joinder of the offenses for trial was proper because the unauthorized entries into the same area within a short period established the existence of a common scheme or plan. *Id.* at 624.

In each of the seven counts of lewd or lascivious conduct with a child brought in this case, defendant was accused of taking advantage of his position as camp counselor to sexually exploit young, male, mentally handicapped campers during a two-week camp session held in one location. Thus, the offenses were connected to each other in time and space, the profile of the victims, the relationship of the victims to defendant, and the opportunity presented to, and exploited by, defendant. Based on these factors, we conclude that the offenses were not only the same or similar in character but also connected together or constituting parts of a single "scheme or plan." Accordingly, we affirm the trial court's refusal to sever the offenses under V.R.Cr.P. 14(b)(1)(A) as a matter of right.

The trial court also denied defendant's motion to sever under V.R.Cr.P. 14(b)(1)(B), which requires severance if, in the judgment of the court, it will promote "a fair determination of the defendant's guilt or innocence of each offense." See *State v. Richards*, 144 Vt. 16, 19, 470 A.2d 1187, 1189 (1983). The court reasoned that defendant had not shown that joinder would inhibit his right to testify, that evidence of each offense would have been admissible at separate trials of the other offenses, and that a limiting instruction would ameliorate any danger of prejudice. Although defendant does not directly challenge the court's decision under Rule 14(b)(1)(B), we will review it be-

cause he argues that evidence of each of the offenses would not have been mutually admissible in separate trials. See 1 C. Wright, Federal Practice and Procedure § 143, at 492 (2d ed. 1982) (in applying the "same or similar character" test, "the most important consideration is whether evidence of one offense would have been admissible at a trial of the other offense"); *State v. Dixon*, 419 N.W.2d 699, 702 (S.D. 1988) (trend is to consider mutual admissibility of evidence as if there had been separate trials).

Evidence of all of the offenses in this case would have been admissible in separate trials of each offense to show opportunity, intent, plan, or absence of mistake or accident. See V.R.E. 404(b); *State v. Parker*, 149 Vt. 393, 399, 545 A.2d 512, 516 (1988) (where the defendant took advantage of the common domicile of the young victims, "there is a clear connection, a nexus, between the two series of sexually inspired actions" that tends to show intent, plan, and opportunity). In *State v. Catsam*, 148 Vt. 366, 382, 534 A.2d 184, 194 (1987), we held that the crucial considerations in determining the admissibility of evidence of other sexual acts are the "similarity between the [other] acts and the crime charged and proximity in time." In that case, we upheld the admission of evidence of prior sexual acts perpetrated against a ten-year-old girl by the defendant because (1) the fact that he had threatened the victim with harm if she were to reveal the prior incidents indicated that the previous acts were part of a plan of molestation; and (2) the prior sexual contact, which occurred at regular times of the day while the mother was elsewhere on six occasions over two years, was not identical but sufficiently similar to indicate that he planned to continue to molest the girl. *Id.* at 381–82, 534 A.2d at 194.

The facts of this case satisfy the *Catsam* test. Defendant warned each of his victims not to tell others about what had taken place. Further, he acted at times of the day when it was less likely that other adults would be around, and he selected victims who were less likely to be aware of the nature and purpose of his contact. Although the specific acts committed by defendant varied somewhat, the common features of defendant's conduct, the settings, and the victims, would have permitted admission of the evidence under 404(b). See *People v. Epps*, 122

Cal. App. 3d 691, 698–700, 176 Cal. Rptr. 332, 337–38 (1981) (evidence of sexual relations with another psychiatric patient was admissible where incidents were seven months apart, involved "on-the-job" sex at the same secured hospital unit, and both victims were young, mentally handicapped females); *State v. Tecca*, 220 Mont. 168, 171, 714 P.2d 136, 138 (1986) (prior sexual acts perpetrated against several young girls were not identical, but were sufficiently similar to establish a common scheme or plan); *State v. Willis*, 370 N.W.2d 193, 198 (S.D. 1985) (evidence that the defendant had sexual intercourse with another mentally retarded patient at the same vocational school was admissible to establish a common design or plan).

▮ Regarding the balancing test required by V.R.E. 403, evidence of related sexual acts against victims whose testimony is not considered entirely reliable has substantial probative value. See *Catsam*, 148 Vt. at 383, 534 A.2d at 195 (evidence of other sexual acts is particularly probative in child sexual assault cases where principal evidence against the defendant is the child-victim's testimony); *State v. Fishnick*, 127 Wis. 2d 247, 257, 378 N.W.2d 272, 277–78 (1985) (greater latitude of proof allowed in admission of other-acts evidence in child sex-crime cases because of relative unreliability of victims' testimony). On the other hand, defendant has failed to show undue prejudice. Indeed, he has not claimed that joinder infringed upon his right to testify with regard to one or more of the offenses. Further, the jury's acquittal on one of the charges "shows it was able to differentiate the counts." See *Chenette*, 151 Vt. at 244, 560 A.2d at 370. We cannot say that the court would have had to exclude the evidence as unduly prejudicial. *Parker*, 149 Vt. at 401–02, 545 A.2d at 517 (describing strong policy against appellate court substituting its judgment for that of trial court regarding the admission of evidence under Rules 404(b) and 403). The trial court acted well within its discretion in refusing to grant defendant's motion to sever the offenses under Rule 14(b)(1)(B).

*Affirmed.*