### State of Vermont v. Nicholas Tonzola

[621 A.2d 243]

No. 91-526

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 8, 1993

492

494

*Jeffrey L. Amestoy*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Paul D. Jarvis* of *Jarvis & Kaplan*, Burlington, for Defendant-Appellant.

**Morse, J.** Defendant Nicholas Tonzola appeals his conviction, following a bench trial, of three counts of lewd and lascivious conduct (L & L) and two counts of perjury. The State charged defendant with six counts of sexual misconduct with five women while defendant was employed as an electroencephalogram (EEG) technician at Vermont State Hospital and Medical Center Hospital of Vermont, where, at various times during the latter part of 1988, the women were patients. The court acquitted

defendant on one count of L & L and two counts of sexual assault involving two of the patients. The perjury charges arose from alleged false statements made by defendant at inquest proceedings prior to the filing of criminal charges. We affirm.

The patients claiming sexual mistreatment suffered from a variety of mental disorders, including depression, borderline personality, and epilepsy. They exhibited various abnormal mental states, such as self-destructive behavior, memory loss, delusional and paranoid thinking, hallucinations, and hysteria. The EEG tests record brain activity. The tests normally last sixty to ninety minutes, and were administered while the patients were under medication to help them relax.

One patient testified that during the course of the EEG, defendant fondled her breast, touched her pubic area, and wet her lips with his fingers. The court found defendant guilty of L & L. A second patient testified that during her EEG, defendant touched her breast and pubic area, and told her to "suck on" his penis. Defendant told her not to tell anyone. Defendant was found guilty of L & L. The third patient testified that defendant wet her lips with his fingers, and then put his fingers in her mouth. When she tried to remove his fingers by using her tongue, defendant asked her if she'd "like to have something else to suck on." Although she said no, defendant exposed his penis. She turned her head away and asked him to call a nurse. Defendant was found guilty of L & L.

The court could not find beyond a reasonable doubt that similar behavior toward two other patients was not willingly accepted by them and acquitted defendant on those two counts.

The perjury charges stemmed from an inquest at which defendant was asked, "Have you ever touched a patient's breast while performing this procedure at the Vermont State Hospital?" and "Did you ask the patient to masturbate your penis during the EEG test?" Defendant answered "No" each time. The court found his responses to have been intentionally false.

Defendant claims numerous points of error: (1) the findings of fact were not supported by the evidence; (2) defendant's motion for acquittal should have been granted because lack of consent for L & L was not established, and, regarding the perjury charges, the taking of an oath was not proved, the perjury counts were not sufficiently corroborated, the counts were

based on a "perjury trap," and the defendant's statements at the inquest should have been suppressed because no *Miranda* warnings were given; (3) the court should have granted severance of the sexual abuse counts and not considered one incident to prove another; and (4) defendant should have been allowed access to all the victims' psychiatric records and allowed independent psychological examination of each victim.

## I.

■■ We first consider defendant's claim that the court's findings are not supported by the evidence. Under V.R.Cr.P. 23, in a case tried without a jury, the court must "make a general finding" and "on request find the facts specially." V.R.Cr.P. 23(c). Defendant did not request any findings of fact prior to issuance of the trial court's decision; he simply asserts that the court's guilty verdicts were not sufficiently explained. Defendant waived findings by not requesting them, and even had he made a request, the trial court made numerous and complete findings which sufficiently explained the outcome. We have had no trouble determining how and why the court reached its judgments. See *Mayer v. Mayer*, 144 Vt. 214, 216, 475 A.2d 238, 239-40 (1984) (failure to make findings on key issues after proper request is cause for reversal where Court is left to speculate how decision was reached).

## II.

■■ Defendant next asserts that his motion for judgment of acquittal should have been granted. Under V.R.Cr.P. 29(a), judgment of acquittal is required where "the evidence is insufficient to sustain a conviction." In reviewing a denial of a motion for judgment of acquittal, the evidence is viewed in the light most favorable to the State, excluding any modifying evidence, and we uphold the ruling if the evidence "fairly and reasonably" could convince a reasonable trier of fact of defendant's guilt beyond a reasonable doubt. *State v. Elkins*, 155 Vt. 9, 17-18, 580 A.2d 1200, 1204 (1990).

## A.

■ Defendant argues first that there was insufficient evidence that defendant was sworn to tell the truth at the inquest.

An inquest is a proceeding designed to aid the prosecutor in deciding whether to prosecute a criminal matter. 13 V.S.A. §§ 5131–5137; *State v. Chenette*, 151 Vt. 237, 251, 560 A.2d 365, 375 (1989); *State v. Alexander*, 130 Vt. 54, 61, 286 A.2d 262, 266 (1971). It is also a judicial proceeding in which the witnesses "shall be sworn." 13 V.S.A. § 5132. "In a judicial proceeding a presumption arises that prior to testimony an oath is administered as required by law." *State v. Lawrence*, 134 Vt. 373, 375, 360 A.2d 55, 57 (1976). The transcript indicates that defendant was given an oath before his testimony. The court reporter wrote: "Nicholas Tonzola, being duly sworn, testifies as follows . . . ." The defense did not object to admission of the inquest transcript, the inquest testimony providing the basis for the false swearing charges. Given the presumption that an oath was administered and the lack of any objection at trial to the admission of the inquest transcript and its accuracy, the State established that defendant took the oath.

### B.

█ Defendant claims that the evidence underlying the two perjury convictions was insufficient because his alleged perjury was not evidenced "by the testimony of two witnesses, or by the testimony of one witness with independent corroborating evidence." *State v. Wheel*, 155 Vt. 587, 607, 587 A.2d 933, 945 (1990) (citing *State v. Woolley*, 109 Vt. 53, 57, 192 A. 1, 3 (1937)). The strictures of this "ancient" rule that the testimony of two credible, sworn witnesses is necessary to sustain a perjury conviction have long ago been relaxed under Vermont law. *Woolley*, 109 Vt. at 57, 192 A. at 3. Regardless of whether or not the two-witness rule applies to the statutory offense of false swearing, we conclude that there was sufficient corroborative evidence to sustain the two false swearing convictions.

█ In *People v. Fueston*, 717 P.2d 978, 980 (Colo. Ct. App. 1985), *rev'd on other grounds*, 749 P.2d 952 (Colo. 1988), the court stated:

> The independent corroborating evidence must be equal in weight to the testimony of another witness, and it must be, by itself, inconsistent with the innocence of the defendant. However, each witness or piece of corroborating evidence

need not independently prove false every aspect of the allegedly perjured testimony. (Citations omitted.)

Here, the first instance of false swearing arose when defendant answered "No" when asked if he had ever touched a patient's breast while performing an EEG. Although the complainants in this case were testifying about separate incidents, the independent accounts of each provided corroborating evidence of the falseness of defendant's testimony. So too with the second count, in which defendant was charged with falsely denying that he asked one of the complainants to perform fellatio on him. The similarity of the victims' stories, strengthened by the fact that they did not know each other or know of the other allegations against defendant, is sufficient corroborating evidence for conviction.

## C.

Next, we consider whether the court should have dismissed the false swearing counts on the basis that the inquest proceeding constituted an impermissible "perjury trap." Defendant predicates his argument by claiming that the judge's remarks that the inquest proceedings were "absolutely secret" and were "for your protection" unfairly misled him. The judge conducting the inquest stated:

There are some things you should know about the inquest and probably your attorney has gone over this with you, but just in case I will cover two points. First off, it is absolutely secret. And the reason for that is as much for your protection as well as for the protection of the investigation. . . .

You understand you have an obligation that you have to testify truthfully, and you are under a penalty of perjury if you do not do so. You have to comply if I rule you have to testify or answer to any particular question. You have a Fifth Amendment privilege to remain silent and if you believe that the answer to any question that's being asked of you would in any way incriminate you, then you have a right to invoke the Fifth Amendment and I will make a decision as to whether or not you have to testify. . . . If you have a question about whether or not you should be invok-

ing the Fifth Amendment you may consult with your lawyer outside of the courtroom.

A "perjury trap," a violation of due process involving outrageous prosecutorial conduct, is a complete defense to perjury. It is shown where the prosecutor "'exhibits no palpable interest in eliciting facts material to a substantive investigation of crime or official misconduct and substantially tailors his questioning to extract a false answer.'" *State v. Wheel*, 155 Vt. at 594, 587 A.2d at 938 (quoting *People v. Tyler*, 385 N.E.2d 1224, 1228, 413 N.Y.S.2d 295, 299 (1978)). To prevail on this defense, defendant must prove that his testimony did not further the purpose of the proceeding and that the prosecutor's questions were designed "solely to entrap" him. *Id.* A perjury trap may be found where questioning by the prosecutor is merely peripheral to the investigation, and "only a quiz to test memory or recall." *People v. Tyler*, 385 N.E.2d at 1229, 413 N.Y.S.2d at 300. Existence of a perjury trap is generally a question of fact, *People v. Kenny*, 100 A.D.2d 554, 554, 473 N.Y.S.2d 255, 257 (1984), and as such the court's determination will not be reversed unless clearly erroneous. See Reporter's Notes to V.R.Cr.P. 23 (because no standard of review is enumerated in rule, federal "clearly erroneous" standard should be applied).

Defendant contended throughout the investigation and trial that he did not commit the acts for which he was convicted. The inquest gave him the opportunity to convince the prosecution that he did not commit a crime. Defendant's right not to incriminate himself was protected by the warnings he received, and the State's questioning served a legitimate investigatory purpose — to evaluate defendant's testimony about his conduct toward the patients. If defendant had persuaded the prosecution that charges of sexual abuse were not warranted, the prosecution would have been averted.

Furthermore, it is not demonstrable on the record before us that as a matter of law the prosecution's tactics were a trap to lure defendant into a new crime of perjury. Questioning by the prosecution was not focused on "minor outward details," and was central to the investigation. See *People v. Tyler*, 385 N.E.2d at 1229, 1230, 413 N.Y.S.2d at 300, 301 (perjury trap found where "only rational explanation for the tactics employed

is the unacceptable one: that a perjury indictment, rather than the ascertainment of facts leading to substantive goals, was the object"). Accordingly, although we are disturbed by the "double or nothing" aspect of this prosecution, we cannot conclude that the trial court's assessment that a "perjury trap" had not been established was clearly erroneous.

## D.

██ Defendant next claims that his answers at the inquest were not admissible to prove the perjury counts because they were made in violation of his *Miranda* rights. *Miranda*, however, does not apply to inquest proceedings, because the witness is not in police custody. *United States v. Mandujano*, 425 U.S. 564, 580 (1976) (lack of *Miranda* warnings in grand jury proceeding did not warrant suppression in subsequent perjury action). We therefore find this claim to be without merit.

## E.

Finally, defendant submits that "there was absolutely no evidence on the consent issue" to support conviction on the charges of lewd and lascivious conduct. The victims believed that they were brought into the hospital for medical treatment, not for the purpose of sexual contact with anyone. The contact occurred during the course of administering EEG tests, and the court found that none of the victims knew that it was unnecessary for defendant to touch their breasts or pubic area while administering an EEG. Furthermore, the victims did not know each other and did not know that the others had been treated the same way.

██ In *McNair v. State*, 825 P.2d 571, 575 (Nev. 1992), the court ruled that when the victims participated under the "pretext of medical treatment and without [their] foreknowledge," the victims' lack of consent was sufficient to support a conviction for sexual assault by a health care professional during the course of medical examinations. The *McNair* court considered the "totality of the circumstances" and that the incidents, as reported by the several victims, were "strikingly similar in the methods by which they were accomplished." *Id.* at 575, 572. Here, the strikingly similar accounts of sexual misconduct dur-

ing the course of a medical procedure as told by six persons who were strangers to each other was sufficient evidence to find lack of consent.

### III.

Defendant also claims that the trial court erroneously refused to sever the six sexual misconduct counts against him. The court had previously ordered a bifurcated trial where the sexual offenses would be heard first, and, should the defendant be found not guilty, the perjury charges would be precluded. Because the case was heard without a jury, however, all charges were heard by the court. Defendant argues that the cumulative effect of hearing the various sexual misconduct counts together was "highly prejudicial." Defendant concedes he is not entitled to severance as a matter of right under V.R.Cr.P. 14(b)(1)(A).

A defendant may be entitled to severance under V.R.Cr.P. 14(b)(1)(B)(i), however, if "it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense." The trial court has substantial discretion in determining whether severance under Rule 14(b)(1)(B) should be granted. *State v. Carter*, 156 Vt. 437, 441, 593 A.2d 88, 91 (1991).

We find no abuse of discretion. The court reasoned that evidence of each alleged offense would be admissible evidence to prove the others. See *State v. Johnson*, 158 Vt. 344, 351–52, 612 A.2d 1114, 1118–19 (1992) (admissibility of other offenses at trial important consideration for severance).

Evidence of so-called "bad acts" is admissible under V.R.E. 404(b) to show intent, plan, or — especially important in this case — absence of mistake by one or more of the patients. The court noted that "much of the strength of the state's case stems from the fact that six different women who do not know each other have all come forward and told strikingly similar accounts of sexual abuse." Thus, the corroborating nature of the evidence was highly probative to dispel any notion that one or another allegation was merely the product of a confused mentally ill woman. If the court had not considered the cumulative weight of the various incidents, the State's case on any one of them would have been unfairly undermined. See *id.* at 352,

612 A.2d at 1119 (common features, settings and similarity of acts warrant admission under Rule 404(b)).

## IV.

Finally, defendant argues that the court should have allowed defendant (1) access to the alleged victims' psychiatric records and (2) the right to independent examination and evaluation of complainants. The court refused to order independent psychological examinations of the witnesses and ordered the State to produce hospital discharge and evaluation reports covering the time after the alleged assaults. Any portions of the reports obtained in a confidential setting were to be redacted, after which the court would review the records in camera before turning them over to the defense. After reconsideration, the court was persuaded to limit the availability of records to those which contained information concerning the witnesses' reliability in relating past events, tendency to confabulate, and other matters affecting the competence of complainants as witnesses. The State provided disclosure to defendant based on this order.

Defendant asserts that failure to provide all medical records and allow for independent examination of complainants "crippled" his defense and "denied him the right to effective cross-examination" under the Sixth Amendment and Chapter 1, Article 10 of the Vermont Constitution. We do not agree. The trier of fact heard ample evidence on the issue of competency, and we find no deprivation of any constitutional right warranting reversal. See, e.g., State v. Gabaree, 149 Vt. 229, 232, 542 A.2d 272, 273 (1988) (no constitutional violation in court's failure to grant defendant's motion for psychiatric examination of alleged victim where defendant had sufficient opportunity to otherwise bring forth evidence concerning victim's veracity). Moreover, defendant has presented no specific justification warranting such broad discovery of the victims' entire medical histories, nor shown why the patient privilege of V.R.E. 503(b) should not apply at least in part.

Defendant deposed eleven psychiatrists, psychologists, and counselors concerning the complainants' mental condition and competency. Under V.R.Cr.P. 16, defendant was permitted to discover (1) expert reports and statements made in connection with the case, including results of physical or mental examina-

tions, (2) documents and any other material or information, excepting work product, which is "material to the preparation of the defense," and (3) exculpatory matter. V.R.Cr.P. 16(a)(2)(C), (D), (G); (b). Defendant also cross-examined at trial all complainants concerning their opportunity to speak with other witnesses, their knowledge of the existence of similar incidents, and their conversations with the attorney general's office and its investigators. Despite the complainants' admitted mental disorders and some inconsistencies in detail between the stories as recounted to the attorney general's office and those given at trial, there was substantial evidence at trial that the complainants' stories were not fabricated.

■ Defendant has received all the medical information he was entitled to. The defense tried to show that the victims' "stories" were induced by the power of suggestion as a result of a conspiracy and sought broad access to the victims' medical conditions in an attempt to illustrate their susceptibility. The State argued that the victims, despite their mental disorders, were credible because the similarity of each of their stories dispelled any motive or reason to make them up. We agree with the State's assessment, and find that each patient's mental disorders were not particularly relevant under the circumstances. Defendant received all discovery that might relate to his theory that their stories were a product of suggestion or fabrication.

*Affirmed.*