2005 VT 13

**STATE of Vermont v. John BARBERA**

[872 A.2d 309]

No. 03-144

¶ 1. February 9, 2005. Defendant appeals from a judgment of conviction, based on a jury verdict, of sexual assault on a person under the age of sixteen, in violation of 13 V.S.A. § 3252(a)(3). He contends: (1) the evidence was insufficient to support the judgment; and (2) the court violated his right to a fair trial by denying his pretrial motion to compel disclosure of the victim's mental health records and refusing to order a psychological evaluation of the victim. We affirm.

¶ 2. In August 2001, K.R. was in residential treatment at the Brattleboro Retreat. She was thirteen years old, and had been in the custody of the Department of Social and Rehabilitation Services for a number of years. Unhappy with the objections of staff to her plan to pierce her nose, K.R. ran away from the Retreat on August 13. She eventually ended up at a nearby Wal-Mart, where she met defendant, who offered her cigarettes and drove her back to his house. According to her testimony, K.R. was in the bathroom about to take a shower when defendant entered and kissed her. A short time later, defendant

asked his daughter, who was eight years old, to go outside. He then put on a pornographic video and sat down to watch with K.R. Over her objections, defendant then removed K.R.'s pants, attempted intercourse, ejaculated, and engaged in oral sex. Later, defendant brought K.R. to a bus station, gave her cigarettes and money for a bus ticket to New York, and left. K.R. rode the bus to New York City, where the next day she was taken into custody by the police and brought to Bellevue Hospital. A forensic examination for sexual assault was performed, and the Brattleboro police were notified. They picked her up that day and returned her to the Retreat, where she was interviewed by the police, her SRS caseworker, and her treating psychologist, Dr. Sacco-Laurens.

¶ 3. Kathleen Faxon, who worked with defendant's daughter through the Big Sister Program in Brattleboro, testified that defendant later told her about the incident, claiming that "[a]ll I did was whip my dick out in front of [K.R.]." The forensic examination performed in New York confirmed the presence of semen in K.R.'s anal area. K.R.'s journal for the period in question corroborated much of her testimony concerning the incident.

¶ 4. The jury returned a verdict of guilty on the charge of sexual assault.[1] Defendant was sentenced to a term of fifteen to twenty years. This appeal followed.

¶ 5. Defendant first contends the evidence was insufficient to support the judgment of conviction of sexual assault based on contact between his mouth and the victim's vagina, as charged in the information, because the only evidence in this regard was the victim's testimony

that defendant had kissed "[m]y crotch." This argument was not preserved for review on appeal. Although defendant moved for judgment of acquittal on the basis of insufficient evidence at the close of the State's case, his only claim as to the sexual assault count was that the victim's testimony was uncorroborated. Defendant also filed a post-verdict motion for judgment of acquittal in which he asserted a general claim of insufficient evidence, but again failed to argue that the evidence was insufficient to show contact between his mouth and the victim's vagina. Accordingly, the claim was not preserved for review on appeal. See *State v. Crannell*, 170 Vt. 387, 407-08, 750 A.2d 1002, 1019 (2000) (failure to raise claim of insufficient evidence in motion for judgment of acquittal at close of evidence, or to renew claim in post-verdict motion, forecloses appellate consideration of sufficiency of evidence).

¶ 6. Defendant next contends the court erroneously denied his pretrial motion to compel disclosure of the victim's mental health records and to order a psychological examination of the victim by the defense expert, thereby allegedly depriving him of his right to a fair trial. The record reveals the following pertinent facts. In October and November 2001, defendant sent the State requests for discovery, seeking — among other things — the victim's SRS, mental health, and medical records. The deputy state's attorney, in response, informed defense counsel by letter that any mental health records relating to the victim were not within the State's custody and control and therefore not subject to compulsory disclosure under V.R.Cr.P. 16, and, moreover, that such material was privileged. In February 2002, defendant filed a motion to compel production of the SRS, mental health, and medical records which defendant had previously requested. Defendant argued that there was a strong likelihood the records would confirm that

---

[1] A second count of unlawful restraint had been dismissed by the court at the close of the State's evidence.

the victim has "a long history of mental illness which is so severe that it affects the reliability of her story." Defendant cited previously disclosed information that the victim had informed the investigating officers that she had run away from the Brattleboro Retreat and had not taken her depression medication for several days prior to the assault. Defendant supplemented the motion to compel with a separate motion to dismiss for failure to provide discovery. The State opposed the motions, asserting that it had complied with defendant's requests for discoverable material within its possession and control.

¶ 7. The court addressed defendant's motions in a brief entry order in March 2002, ordering the State to produce certain SRS materials for in camera review, but declining to order disclosure of the victim's mental health records on the following grounds: "The defendant has failed to make a particularized showing that mental health records are necessary to the defense. The State does not have these records in its possession, custody, or control, they apparently are not relying on these mental health witnesses at trial and the items are protected by privilege." The court subsequently disclosed some of the SRS records, including a redacted treatment plan, dated July 25, 2001, which listed a number of the victim's psychiatric diagnoses, including "PTSD" (post-traumatic stress disorder), and the partial results and evaluation of the victim's performance on a psychological test called "The Dissociative Experience Scale."[2]

¶ 8. Some six months later, in September 2002, defendant filed another motion to compel, seeking an order not only

requiring the victim to produce her mental health records, but also to submit to a psychological examination. Defendant asserted that the victim had exhibited an inability to recall details of the assault and had become hostile and confused in response to certain questions at her deposition. Defendant also noted that the records released by the court after in camera review revealed that the victim had been diagnosed with a number of psychiatric syndromes, including post-traumatic stress disorder and "[d]issociation and severe emotional developmental disability" which defendant claimed had "a pronounced affect upon her ability to discern fact from fantasy [and] her ability to understand the consequences of falsification." The State opposed the motion, asserting that defendant had failed to adduce sufficient grounds to justify a compulsory independent psychiatric examination, and that the requested mental health records were not in its possession and were otherwise privileged.

¶ 9. The motion was heard in October 2002. Defendant argued that the mental health records and examination were necessary to provide an adequate basis for his mental health expert, Dr. Lawrence Bart, to diagnose the victim and determine whether she suffered from a mental illness which affected her ability to accurately perceive, recall, and recount events. The court, in response, questioned whether it had the authority to require the victim to submit to an independent psychiatric examination absent a prior examination by the State's expert, expressed "concerns about requiring a victim to undergo what really is the most intrusive sort of evaluation that a person could go through," and ultimately denied the request for an examination, concluding that defendant had adequate alternative means of evaluating the victim's mental health. In this regard, the court noted that its in camera review

---

[2] Although apparently contained in the SRS casefile, these documents appear to have been generated by other agencies.

had resulted in disclosure of the victim's previous diagnoses, that defendant's expert could testify about the symptoms associated with these diagnoses, and that the expert could review the victim's deposition to assess her emotional reactions and responses. The court did not specifically address the renewed motion to compel disclosure of the victim's mental health records. Later, the court granted defendant's supplemental request to have Dr. Bart in the courtroom during the victim's testimony to allow additional observation and evaluation.

¶ 10. Turning first to defendant's claim that the court erred in denying his request for the victim's mental health records, we conclude — for the reasons explained below — that defendant failed to properly preserve this issue for review. In *State v. Percy*, 149 Vt. 623, 635, 548 A.2d 408, 415 (1988), we recognized "the possibility that a case will arise where due process will require some access to privileged information about the victim not held by the State." There, as here, defendant had filed a pretrial motion to compel the State to disclose certain mental health records relating to the victim of an assault. We upheld the trial court's denial of the motion, concluding that defendant's request was fatally deficient in two respects. First, we held that to overcome the important policies protecting such sensitive information requires "the most compelling justification," and that defendant — having failed to make any particularized showing as to how the information would help his defense — could not meet this standard. *Id.*

¶ 11. Second, we held that the procedural method utilized by defendant — a discovery request addressed to the State to disclose information not in its possession and control — was inadequate. If the defense believes that it has a legitimate need for such information in the hands of other agencies, we explained, it must utilize its discovery powers to seek to acquire it directly. "Ordinarily, this means use of depositions and subpoenas if necessary. See V.R.Cr.P. 15, 17. Then, the trial court can make an informed ruling that weighs the competing interests." *Id.* at 635-36, 548 A.2d at 415; see also *State v. Roy*, 151 Vt. 17, 34, 557 A.2d 884, 894 (1989) (defendant who sought access to state trooper's personnel file should have attempted to subpoena records from custodian rather than request disclosure from prosecution). We observed that this procedure was used in *Pennsylvania v. Ritchie*, 480 U.S. 39, 57-60 (1987), the seminal United States Supreme Court decision recognizing a due process right to in camera inspection of privileged materials in the prosecutor's file, and was "described in detail" in *State v. Esposito*, 471 A.2d 949 (Conn. 1984). *Percy*, 149 Vt. at 636 n.8, 548 A.2d at 415 n.8. "We approve of the procedure outlined in *Esposito*," we concluded. *Id.*

¶ 12. The procedure outlined in *Esposito* and utilized in many jurisdictions contemplates service of a subpoena duces tecum upon the custodian of the mental health records sought to be disclosed, in camera review of the records by the trial court, and a determination as to whether they contain information critical to the defendant's ability to impeach the witness and therefore warrant disclosure. *Esposito*, 471 A.2d at 956; accord *D.P. v. State*, 850 So. 2d 370, 373-75 (Ala. Crim. App. 2002); *Commonwealth v. Barroso*, 122 S.W.3d 554, 562-64 (Ky. 2003); *People v. Stanaway*, 521 N.W.2d 557, 574-75 (Mich. 1994); *State v. Duffy*, 6 P.3d 453, 458-59 (Mont. 2000); *State v. Ramos*, 858 P.2d 94, 98-99 (N.M. Ct. App. 1993). If the court concludes that, in its judgment, the records contain no information that should be disclosed, then the material may remain under seal and "be made available for inspection on

appellate review." *Esposito*, 471 A.2d at 956.[3]

¶ 13. Here, despite repeated admonitions to defendant that the requested mental health records were not in the State's custody and control, nothing in the record indicates — nor indeed does defendant even contend — that he attempted to subpoena the records from their custodian (the Brattleboro Retreat), as directed by *Percy*. Thus, the court was not afforded an opportunity to review the records in camera and determine either that they contained material that should be disclosed, or that they revealed nothing critical to defendant's ability to impeach the victim and order that they remain under seal and available for appellate review. It is defendant's responsibility to ensure an adequate record for

purposes of appellate review. See *Lorrain v. Ryan*, 160 Vt. 202, 207 n.1, 628 A.2d 543, 547 n.1 (1993) (appellant carries burden of producing an adequate record to support points appealed). This did not occur here. Accordingly, we are unable to address defendant's claim that the court erred in denying the motion to compel disclosure of the victim's mental health records.

¶ 14. Defendant also contends the court erred in denying his motion to compel the victim to undergo an examination by his expert psychologist. Although we have alluded to the possibility that there may be cases which would warrant a court-ordered psychiatric examination of a victim, this is not such a case.[4] The claimed justification for the

---

[3] There is some conflict among the courts as to whether — having found that the records warrant disclosure — the trial court must obtain the victim's waiver of the physician-patient privilege prior to release, on penalty of precluding the victim from testifying, restricting the State's ability to refer to the records, or some other appropriate sanction, see, e.g., *Esposito*, 471 A.2d at 956, or whether the court may order disclosure regardless of the victim's consent. See, e.g., *Barroso*, 122 S.W.3d at 564-65 (characterizing waiver requirement as "unworkable or unwieldy," particularly where the holder of the privilege is a minor and the court must determine who has the authority to assert or waive the privilege on the child's behalf). We did not address this specific issue in *Percy*, nor need we consider it here, in light of defendant's failure to subpoena the records in the first instance. Presumably, however, the court in this case could have looked to SRS to assert or waive the privilege on K.R.'s behalf.

[4] See *State v. Weeks*, 160 Vt. 393, 403, 628 A.2d 1262, 1267-68 (1993) (reversing and remanding because State's expert exceeded his proper role at trial, but noting that, absent reversal, Court "might be inclined to agree" that denial of request for independent psychological examination violated right to due process); *State v. Tonzola*, 159 Vt. 491, 502-03, 621 A.2d 243, 249 (1993) (finding no error in denial of request for independent psychiatric evaluation of victims where defendant was able to adduce ample evidence on issue of victims' competency by other means); *State v. Ross*, 152 Vt. 462, 466, 568 A.2d 335, 338 (1989) (recognizing that there may be cases where due process right to reciprocal discovery requires court to allow examination of victim by defense expert or prohibit State from admitting testimony of its expert who had examined victim); *Percy*, 149 Vt. at 635 n.7, 548 A.2d at 415 n.7 (citing a New Hampshire decision, *State v. Boisvert*, 400 A.2d 48 (N.H. 1979), which allowed such examinations, and noting that a court-ordered exam may actually involve

examination here was to provide a more complete diagnostic basis for the expert's assessment of the victim's ability to accurately perceive, recall, and recount events in light of her acknowledged psychiatric diagnoses. The same argument, however, could be made for any assault victim with a history of mental illness. Moreover, defendant had received documents describing the victim's diagnoses and performance on a psychological test known as the dissociative experience scale, and his expert, Dr. Bart, was afforded ample opportunity to review these materials and to assess the victim's responses and reactions to extensive questioning both at her deposition and at trial.

¶ 15. Based on these materials and observations, Dr. Bart was able to testify with a reasonable degree of medical certainty that the victim suffered from "post-traumatic stress disorder with some dissociative characteristics." Dr. Bart explained at length the meaning of dissociation, which he described as a "method of protection in which memory is changed in order to not have to think about or re-experience the pain from an event." People with the syndrome, he continued, "have some considerable difficulty knowing which of their information came from imagination and which of their information came from their environ-

"a lesser intrusion on the victim's privacy" than disclosure of the victim's medical records "since the use of the exam would have been apparent from the beginning"); *State v. Gabaree*, 149 Vt. 229, 231-32, 542 A.2d 272, 273-74 (1988) (holding that where defendant failed to preserve the issue, denial of motion for psychiatric examination of sexual assault victim was not plain error where "defense counsel had ample opportunity to bring forth evidence of the alleged victim's reputation for truthfulness").

ment. And ... they really have difficulty telling which is which." Dr. Bart's review of the victim's diagnostic history and previous testing, and observations of "changes in her emotionality and in her affect in response to questions," confirmed his diagnosis that she suffered from the kind of disorder "in which memory problems occur." Indeed, he concluded that the victim "in fact does have significant problems with remembering accurately."

¶ 16. In view of the alternative sources of information that were made available to Dr. Bart, and his unequivocal testimony at trial relating to the victim's credibility, we are unable to conclude that the trial court abused its discretion in finding that further invasion of the victim's privacy through a court-ordered psychological examination was unnecessary. See *Tonzola*, 159 Vt. at 503, 621 A.2d at 249 (no error in denying request for independent psychiatric exam where ample other evidence was adduced relating to victims' ability to accurately recount past events). Indeed, although Dr. Bart twice noted that he would have liked to have interviewed the victim and seen all her records, he was also insistent that it did not alter his diagnosis and conclusions concerning the victim's memory problems. Accordingly, there was no compelling necessity to have ordered a psychological examination of the victim in this case.[5] Thus, we discern no basis to disturb the judgment.

[5] Although other jurisdictions that have addressed the issue are divided on the question whether a court may order the complaining witness in a criminal case to submit to a psychiatric examination, see generally G. Sarno, Annotation, *Necessity or Permissibility of Mental Examination to Determine Competency or Credibility of Complainant in Sexual*

*Affirmed.*

*Offense Prosecution*, 45 A.L.R.4th 310 (1986), even those that allow them uniformly caution that courts must have compelling reasons to justify such an intrusion into the witness's privacy rights. See, e.g., *Murphy v. Superior Court*, 689 P.2d 532, 535 (Ariz. 1984); *Baker v. State*, 526 So. 2d 202, 204-05 (Fla. Dist. Ct. App. 1988); *State v. Gregg*, 602 P.2d 85, 91 (Kan. 1979); *State v. Huck*, 644 So. 2d 1099, 1105 (La. Ct. App. 1994); *State v. Welch*, 490 N.W.2d 216, 219 (Neb. 1992); *Boisvert*, 400 A.2d at 51. But compare *State v. Gabrielson*, 464 N.W.2d 434, 438 (Iowa 1990) ("courts have no authority to order sexual abuse victims to undergo psychiatric examinations" and "no method of enforcing such an order" even if they did); *Commonwealth v. Widrick*, 467 N.E.2d 1353, 1356-57 (Mass. 1984) (trial court does not have statutory or inherent authority to order psychiatric examination of complaining witness to assess credibility); *State v. Crist*, 833 P.2d 1052, 1056 (Mont. 1992) ("[N]o legal authority exists in Montana to compel a victim in a sexual assault case to be examined by a defendant's psychologist."); *State v. Clontz*, 286 S.E.2d 793, 797 (N.C. 1982) (holding that a "trial judge does not have the discretionary power to compel an unwilling witness to submit to a psychiatric examination"). As discussed above, even if we agreed with those states that allow court-ordered psychiatric examinations of the complaining witness at the discretion of the trial court, we could not find that the court abused its discretion here where defendant was provided sufficient opportunity for his expert to evaluate the witness and draw reasoned conclusions concerning her credibility. Thus, there was no compelling ground for requiring an additional psychological evaluation.

Motion for reargument denied March 3, 2005.