2007 VT 13

# State of Vermont v. Timothy Wiley

[917 A.2d 501]

No. 05-435

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed February 2, 2007

*Dan M. Davis*, Windham County State's Attorney, and *Tracy Kelly Shriver*, Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

¶ 1. **Burgess, J.** Defendant Timothy Wiley appeals from his convictions for aggravated sexual assault, lewd and lascivious conduct with a child, and obstruction of justice. Defendant asserts that (1) his convictions for both aggravated sexual assault and lewd and lascivious conduct violated the Double Jeopardy Clause, and (2) the evidence was insufficient to sustain any of the convictions. We affirm.

¶ 2. On May 22, 2004, A.H. reported to her father, and then to police, that her mother's boyfriend had forcible sex with her on numerous occasions in the past several months. A.H. was thirteen at the time. The next day, police collected blankets and sheets from A.H.'s bed.

Sperm and female epithelial cells were later collected from a seminal fluid stain found on the bedding. DNA from those cells was compared to DNA samples from A.H. and defendant, and the two were found to be likely sources of the cells. The State filed charges against defendant for aggravated sexual assault and lewd and lascivious conduct in June 2004.

¶ 3. Defendant was held for lack of bail pending trial. While incarcerated, defendant had a series of telephone conversations with A.H.'s mother, a developmentally impaired woman. Recordings of three of the conversations were introduced by the State at trial. In the first conversation, from July 18, 2004, the mother indicated that she was afraid to lose custody of A.H. Defendant suggested that the mother talk to A.H. and tell A.H. that she's lying. In the second conversation, recorded two days later on July 20, 2004, defendant asked the mother to talk to A.H. and persuade her to drop the charges. Otherwise, defendant warned, he would testify at trial and reveal information that would cause the state to take A.H. away from her. The mother responded by saying: "Yeah. Oh, my God. It's not good." In the third conversation, recorded February 25, 2005, defendant told the mother: "I need your help . . . [Y]ou have to try to remember . . . me having sex in [A.H.]'s room and then climbing out the window." After further prompting by defendant, the mother twice denied remembering having sex with defendant in A.H.'s room. Defendant replied, "that right there isn't going to help," and told the mother that if she was asked in court about the sexual encounter she should say that she remembered it. Based on these recordings, the State charged defendant with two counts of obstructing justice for threatening the mother with losing custody of A.H. and for suggesting that she lie under oath about remembering a sexual encounter with defendant on A.H.'s bed. After the information was amended to add these charges, defendant waived his right to a jury and was tried by the court.

¶ 4. A.H. testified to forced vaginal intercourse with one "Tim Wiley" on more than five occasions in the months preceding her report to police. A.H. also described one instance when Tim Wiley forced A.H. to perform oral sex. According to A.H., these acts occurred while Tim Wiley was living with her and her mother. A.H. said that she thought of Tim Wiley as her "stepdad" and as her mother's "true boyfriend." However, A.H. was not asked to identify the defendant sitting in the courtroom as the perpetrator of the assaults or as the Tim Wiley she was referring to.

¶ 5. The mother, in her testimony, described living in a series of apartments with A.H. and defendant. The mother made a courtroom identification of defendant as the Tim Wiley with whom she and A.H. had lived. The mother also identified the voices from the recorded telephone conversations as those of herself and defendant. The mother stated that she never felt threatened by anything defendant said during those conversations and testified to remembering a sexual encounter with defendant on A.H.'s bed. The mother maintained that she remembered the encounter without assistance from anyone.

¶ 6. At the close of evidence, and again post trial, defendant moved for a judgment of acquittal pursuant to Vermont Rule of Criminal Procedure 29. Defendant's motions for acquittal on the sexual assault and lewd and lascivious conduct charges were premised on the State's failure to have A.H. identify the defendant seated in the courtroom as the Tim Wiley who engaged in those sexual acts. In his motions for acquittal on the obstruction of justice charges, defendant contended that the State failed to prove that the mother was actually made afraid by defendant's threats and that the State failed to prove that her testimony about a sexual encounter with defendant on A.H.'s bed was not truthful. The trial court denied defendant's motions. Defendant's appeal challenges these rulings, and raises the issue of whether, under the facts presented, conviction for both aggravated sexual assault and lewd and lascivious conduct violated the Double Jeopardy Clause.

## I. Double Jeopardy

¶ 7. Defendant raises for the first time on appeal that convictions for both aggravated sexual assault and lewd and lascivious conduct are a violation of the constitutional prohibition against double jeopardy. A constitutional issue not raised at trial is reviewed only for plain error. *State v. Judkins*, 161 Vt. 593, 594, 641 A.2d 350, 351 (1993) (mem.). Plain error must be both obvious and prejudicial, *id.*, and neither is present here.

¶ 8. The Double Jeopardy Clause provides that no person may "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Clause prohibits second or subsequent prosecutions for the same offense as well as multiple impositions of punishment for an offense. *State v. Grega*, 168 Vt. 363, 382, 721 A.2d 445, 458 (1998) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). The Double Jeopardy Clause does not, however, prevent

cumulative punishments when the Legislature has proscribed conduct by more than one criminal statute or offense. *Missouri v. Hunter*, 459 U.S. 359, 367-68 (1983). "[W]hether or not a conviction and sentence may be had under each statute is a question of legislative intent, not constitutional prohibition." *Grega*, 168 Vt. at 382, 721 A.2d at 458; see also *Hunter*, 459 U.S. at 368. In the absence of express legislative intent, we apply the test of statutory construction first enunciated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *State v. Hazelton*, 2006 VT 121, ¶ 24, 181 Vt. 118, 915 A.2d 224. Under *Blockburger*, "two offenses are considered the same offense for double jeopardy purposes unless each provision requires proof of a fact that the other does not." *Id.* (internal quotations omitted).

¶ 9. The charges of aggravated sexual assault and lewd and lascivious conduct did not specify the acts to which each pertained. The aggravated sexual assault count charged defendant with committing "repeated nonconsensual sexual acts as part of a common scheme or plan" between March 28, 2004 and May 22, 2004. The count of lewd and lascivious conduct charged defendant with "contact between his penis and the vagina of A.H." during the same time period. The verdict in the case was no more specific in terms of the acts that were proven for each charge; the court stated only that the State had proven the acts alleged beyond a reasonable doubt. In the absence of a more specific information, defendant argues, the charge of repeated nonconsensual sexual acts during the time at issue must have included all of the sexual acts described by A.H.[1] and there was, therefore, no remaining conduct that could be assigned to the lewd and lascivious conduct charge.

¶ 10. Defendant is correct that aggravated sexual assault by repeated nonconsensual sexual acts can, by its terms, encompass multiple — two or more — sexual acts. A.H.'s testimony described acts of vaginal and oral intercourse; A.H. did not describe any other type of sexual conduct by, or contact with, defendant. According to defendant, all of the conduct alleged is therefore covered by the assault charge. In the absence of any other improper sexual conduct to support the lewd and lascivious charge, defendant maintains, a conviction for lewd and lascivious conduct was impermissible because all elements of lewd and lascivious conduct are necessary elements to sexual assault. The State responds

---

[1] "Sexual act" is defined for purposes of sexual assault crimes as "contact between the penis and the vulva, the penis and the anus, the mouth and the penis, the mouth and the vulva, or any intrusion, however slight, by any part of a person's body or any object into the genital or anal opening of another." 13 V.S.A. § 3251(1).

that under *State v. Fuller* two sexual acts are sufficient to satisfy the requirement of "repeated" acts. 168 Vt. 396, 400-02, 721 A.2d 475, 479-80 (1998). Therefore, the State argues, we may assume that the trial court found two or more, but not all, of the sexual acts to fulfill the sexual assault charge and found whatever remaining acts fulfilled the lewd and lascivious conduct charge. We conclude that conviction under both charges did not violate double jeopardy. However, we need not assign acts to one charge or another as the State suggests. Rather, we need only determine whether the two offenses contain distinct elements to satisfy the *Blockburger* test.

¶ 11. Several different elements in the two criminal statutes lead us to conclude that the *Blockburger* test is satisfied. As charged in this case, lewd and lascivious conduct consisted of: defendant wilfully committing a lewd act upon a person under sixteen years of age with the intent to appeal to his own sexual desires. See 13 V.S.A. § 2602; *State v. Forbes*, 161 Vt. 327, 332-33, 640 A.2d 13, 16 (1993) (discussing elements of lewd and lascivious conduct with a child). Aggravated sexual assault, as charged, consisted of: defendant, acting with intent, engaging in repeated and compelled sexual acts with a person. See 13 V.S.A. §§ 3252, 3253(a)(9). There is at least one element of each crime that is not a part of the other: sexual assault includes the elements of compulsion and engaging in a "sexual act," i.e., contact between certain body parts;[2] lewd and lascivious conduct contains neither of these elements. Indeed, lewd and lascivious conduct does not necessarily require physical contact between the perpetrator and victim, see, e.g., *State v. Johnson*, 158 Vt. 344, 348, 612 A.2d 1114, 1116 (1992) (upholding lewd and lascivious conduct conviction when defendant encouraged child to masturbate in the presence of others), though contact was a part of the charge in this case. Further, lewd and lascivious conduct includes the element of appealing to or gratifying one's sexual desires. Though appealing to sexual desire may be often associated with sexual assault, such motive is not an element of that crime, and lewd and lascivious conduct may thus be distinguished on that basis. See *State v. Norton*, 332 S.E.2d 531, 532-33 (S.C. 1985) (holding that reindictment for committing a lewd act upon a child after acquittal for sexual battery on a minor did not place defendant in double jeopardy because

[2] See note 1, *supra*, for the definition of "sexual act."

lewdness did not require sexual battery and lewdness requires intent of appealing to sexual desires of himself or child). But see *Meador v. State*, 711 P.2d 852, 855-56 (Nev. 1985) (concluding lewdness had no element distinct from sexual assault, and was therefore a lesser-included offense, despite lewdness statute's requirement that person have intent of appealing to sexual desires), *disapproved of by Talancon v. State*, 721 P.2d 764, 768-69 (Nev. 1986). Having found distinctions between the elements of sexual assault and lewd and lascivious conduct, we conclude under *Blockburger* that the Legislature intended to allow multiple convictions and punishments for the same conduct under these differently defined offenses.

## II. Sufficiency of Evidence

¶ 12. In reviewing the denial of a motion for acquittal, we look at evidence presented by the State, viewed in light most favorable to State and excluding modifying evidence, to determine whether evidence sufficiently and fairly supports findings of guilt beyond a reasonable doubt. *Grega*, 168 Vt. at 380, 721 A.2d at 457. Defendant alleges that the evidence was insufficient in three respects: (1) A.H. did not make an in-court identification of defendant as the perpetrator of the sexual assaults and lewd and lascivious conduct; (2) the State did not prove that the mother was actually made afraid by defendant's threats; and (3) the State did not prove that the mother's testimony about a sexual encounter with defendant on A.H.'s bed was not truthful.

¶ 13. Viewing the evidence in the light most favorable to the State, the evidence was sufficient to support a finding that defendant was the man who committed the acts described by A.H. In her testimony, A.H. described sexual acts perpetrated by a man she referred to as "Tim Wiley" while he lived with A.H. and her mother. A.H. said that she thought of Tim Wiley as her "stepdad" and as her mother's "true boyfriend." Subsequently, the mother testified to living in a series of apartments with A.H. and Tim Wiley. The mother then made an in-court identification of defendant as the Tim Wiley with whom she and A.H. had lived. Further, the police officer who took a DNA sample from defendant also made an in-court identification of defendant as the man who had supplied the DNA sample. This DNA sample was compared to a seminal stain on A.H.'s bedding, and the provider of the sample was found to be a likely source of the seminal stain. These two independent in-court identifications of defendant — as the man with whom A.H. and her mother had lived and the likely source of the seminal fluid stain on A.H.'s bedding — were more than sufficient to

support a finding that defendant was the man who committed the acts described by A.H. We thus find no error in the court's denial of defendant's motion for acquittal on that basis.

¶ 14. The obstruction of justice statute prohibits various acts, described in numerous clauses, intended to interfere with legal proceedings. Two of these prohibitions are relevant to this discussion:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication, intimidates or impedes any witness ... or corruptly or by threats or force or by any threatening letter or communication, obstructs or impedes, or endeavors to obstruct or impede the due administration of justice, shall be imprisoned not more than five years or fined not more than $5,000.00, or both.

13 V.S.A. § 3015. Defendant was charged under the final, omnibus clause for both his threats against the mother and his suggestion to her that she lie under oath. Defendant contends that the State needed to prove that the mother was actually made afraid by defendant's threats. In support of this argument, defendant cites *State v. Ashley* in which we stated that obstruction of justice by threatening a witness requires "only that the witness be made afraid or deterred, not that the witness be both." 161 Vt. 65, 71, 632 A.2d 1368, 1372 (1993). Defendant argues that the evidence here indicates that the witness was neither deterred — she did, in fact, testify — nor frightened in light of her testimony that she never felt threatened by anything defendant said. Therefore, according to defendant, under *Ashley* the State did not prove all elements of the offense.

¶ 15. *Ashley* construed the first clause of the statute, which provides that a threat is criminal if it "intimidates or impedes any witness." Defendant, however, was charged under the omnibus clause with "endeavor[ing] to obstruct or impede the due administration of justice." With inclusion of the term "endeavor," this clause, like its nearly identical federal counterpart,[3] does not require that a defendant succeed in his attempt to interfere with the due administration of

---

[3] The federal obstruction-of-justice statute's omnibus clause provides: "Whoever ... corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided ...." 18 U.S.C. § 1503(a).

justice; a mere "endeavor" suffices. *United States v. Aguilar*, 515 U.S. 593, 599 (1995). The State was thus not required to prove that the witness was deterred or made afraid by defendant's threats, only that he attempted to influence her actions. The evidence, viewed in the light most favorable to the State, indicates that defendant told the witness that if his case went to trial he would disclose information that would cause her to lose custody of her daughter. Defendant further asked the witness, A.H.'s mother, to convince her daughter to drop the allegations of sexual assault. This evidence sufficiently and fairly supports a finding that defendant attempted to obstruct or impede the due administration of justice.

■ ¶ 16. Finally, defendant maintains that the evidence was also insufficient to support conviction for the other count of obstruction of justice, regarding defendant's prompting of the mother to recall a sexual encounter on A.H.'s bed, when the State did not prove that the encounter did not actually occur. Defendant's conclusion, however, does not necessarily follow from the alleged absence of proof that the encounter did not occur. First, the fact finder could reasonably find the mother's recollection of the encounter incredible in light of the recorded conversation with defendant in which she repeatedly states that she did not remember the encounter and her denial while testifying that she had any help in remembering the incident. We afford great deference to the fact finder in weighing the credibility of witnesses. *Havill v. Woodstock Soapstone Co.*, 2004 VT 73, ¶ 21, 177 Vt. 297, 865 A.2d 335. The court could thus have concluded that the story was fabricated by defendant and repeated by the witness at his behest. Second, defendant specifically asked the mother to lie under oath when, after she insisted to him she did not remember a sexual encounter on A.H.'s bed, defendant told her to say that she did remember it, if asked. Encouraging a potential witness to lie under oath fits within the charged crime of "corruptly endeavor[ing] to obstruct or impede the due administration of justice." See *United States v. Wesley*, 748 F.2d 962, 964 (5th Cir. 1984) (affirming conviction under federal omnibus clause for "urging and advising" a witness to testify falsely). We therefore find the evidence sufficient to support the conviction.

*Affirmed.*